**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SHAWN JULY,

          Plaintiff,

v.

STEPHEN D'ILIO, et al.,

          Defendants.

Civil Action No. 16-4568 (MAS) (LHG)

**OPINION**

**SHIPP, District Judge**

Plaintiff is proceeding *in forma pauperis* with a civil rights Complaint filed pursuant to 42 U.S.C. § 1983. The Court previously dismissed the Complaint as time-barred. (Mem. Op. 2, Nov. 22, 2016, ECF No. 6.) Plaintiff submitted an Amended Complaint (Am. Compl., Feb. 24, 2017, ECF No. 16), which the Court again dismissed, finding that with the exception of Plaintiff's solitary confinement claim, all other claims were still time-barred. (Mem. Op. 1-2, July 24, 2017, ECF No. 19.) With respect to the solitary confinement claim, which was alleged to be for a period of seventeen months, the Court found that Plaintiff failed to state a claim. (*Id.* at 3-4.) The Court subsequently provided Plaintiff one final chance to amend the pleading—as it appeared that Plaintiff's placement in solitary confinement was for a significantly longer period of time—but warned that his failure to properly amend the pleading would result in a dismissal *with prejudice*. (Mem. & Order, ECF No. 27.) Presently before the Court is Plaintiff's Second Amended Complaint ("SAC"). (SAC, ECF No. 33.)

I.  **FACTUAL BACKGROUND**

The allegations of this SAC will be construed as true for purposes of this screening opinion. Plaintiff brings this civil rights action against more than sixty defendants. The gravamen of his lengthy SAC relates to his continued placement in involuntary protective custody ("IPC") without a proper hearing and without proper reviews of his status.

Plaintiff alleges that on March 12, 2013, he was involved in a fight with another inmate in East Jersey State Prison. (SAC ¶ 64.) After being questioned by investigators and refusing to speak, Plaintiff states that he was threatened. (*Id.* ¶¶ 67-70.) He was later strip searched, and transferred to New Jersey State Prison ("NJSP"), where he was placed in IPC, on March 13, 2013. (*Id.* ¶¶ 72, 80.) Plaintiff alleges that his placement in IPC was without evidence, proper notice, or a statement of reasons, in violation of New Jersey law. (*Id.* ¶¶ 82-97.) Plaintiff states that he went before the Institutional Classification Committee ("ICC") on March 26, 2013, May 5, 2013, and September 30, 2013, but was not afforded proper due process protections. (*Id.* ¶¶ 105, 115, 118.) He wrote letters and grievances to numerous prison officials, each of whom failed to take remedial action. (*Id.* ¶¶ 98-120.) Plaintiff explains that it was not until August 12, 2014, seventeen months after he was placed in IPC, that he was given a hearing related to his initial placement in IPC. (*Id.* ¶ 125.) During that hearing, Plaintiff submitted various documents and witness statements, but it was determined that he should remain in IPC. (*Id.* ¶¶ 133-45.)

Plaintiff also alleges that while in IPC: he was denied participation in the "contact visit program" (*id.* ¶ 164), he was unable to "exercise his 'religion'" (*id.* ¶ 166), he was served food with dead roaches (*id.* ¶ 168), his mail was censored (*id.* ¶¶ 171-74, 220-23), he was subject to strip searches (*id.* ¶ 178), he was deprived of "congregate status" (*id.* ¶¶ 179-80), he was deprived of his yearly IPC hearing (*id.* ¶¶ 181-84), he was subject to sexual advances by prison officials (*id.*

2

¶¶ 194-95), he was denied proper legal assistance (*id.* ¶¶ 203-19), he was denied proper medical care for onychomycosis (toenail fungus) (*id.* ¶¶ 224-26), he was improperly classified as a member of a security threat group (*id.* ¶¶ 228-33), and his sentence was miscalculated by an additional two and a half years (*id.* ¶¶ 234-39).

Plaintiff states that in December 2016, he was informed he would be transferred to a prison in Pennsylvania. (*Id.* ¶¶ 257, 259.) Once there, Plaintiff alleges that the New Jersey Department of Corrections ("NJDOC") failed to forward him his legal material. (*Id.* ¶ 287.) Upon returning to NJSP, Plaintiff states that he was immediately placed in IPC, his property was confiscated, and his unit was infested with roaches. (*Id.* ¶¶ 341-46.)

In essence, Plaintiff's SAC amounts to a laundry-list of alleged violations that occurred over the span of more than five years while he was incarcerated at NJSP, a prison in Pennsylvania, and then back at NJSP. Specifically, Plaintiff raises eleven causes of action: (1) violation of due process; (2) insufficient legal assistance; (3) violation of free speech through mail tampering; (4) violation of the right to practice his religion; (5) deprivation of medical care; (6) retaliation and sexual harassment; (7) violation of due process when erroneous information about his sentence was not corrected; (8) violations of the Eighth and Fourteenth Amendments based on his miscalculated sentence; (9) retaliation resulting in his transfer to Pennsylvania; (10) deprivation of property without due process; and (11) negligence and gross negligence. (*Id.* ¶¶ 359-79.) Plaintiff seeks damages for his claims. (*Id.* ¶¶ 380-82.)

II. **LEGAL STANDARD**

Under the Prison Litigation Reform Act ("PLRA"), district courts are required to review civil actions in which a prisoner proceeds *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2)(B). When reviewing such actions, the PLRA instructs courts to dismiss cases that are at any time

3

frivolous or malicious, fail to state a claim on which relief may be granted, or seek monetary relief against a defendant who is immune. *Id.* "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).

Because Plaintiff is proceeding *in forma pauperis*, the applicable provisions of the PLRA apply to the screening of his SAC. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* In order to survive a dismissal for failure to state a claim, a complaint must allege "sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A plaintiff must be able to demonstrate that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* at 676. Furthermore, while *pro se* pleadings are liberally construed, pro se litigants "still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

## III. ANALYSIS

The Court considers Plaintiff's claims brought pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To recover under this provision, two elements must be shown. First, a plaintiff "must establish that the defendant acted under color of state law," and second, that the plaintiff has been deprived of "a right secured by the Constitution." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).

### A. Official Capacity Claims

Plaintiff raises claims against the New Jersey Department of Corrections ("NJDOC"), NJSP, and the Special Investigation Division at the NJSP. In addition, he sues Defendants in their official and personal capacities and seeks damages. States and state agencies are not "persons" subject to suit under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Pettaway v. SCI Albion*, 487 F. App'x 766, 768 (3d Cir. 2012) (holding that a state department of corrections is not a "person" under the statute and cannot be sued under § 1983). Additionally, for purposes of § 1983, "a lawsuit against public officers in their official capacities is functionally a suit against the public entity that employs them." *Cuvo v. De Biasi*, 169 F. App'x 688, 693 (3d Cir. 2006) (citing *McMillian v. Monroe Cty.*, 520 U.S. 781, 785 n.2 (1997)). Accordingly, Plaintiff's claims against Defendants in their official capacities, and against the NJDOC, the NJSP and the Special Investigation Division are dismissed with prejudice.

B. **Due Process**

Plaintiff alleges that his rights were violated by his continued placement in IPC without due process. He raises this claim against Defendants Lanigan, D'Ilio, Campos, Warren, Robinson, Fletcher, Cortes, Nelson, Barnes, Birardi, Hintz, Spires, Ricci, Dicristi, and Ford. (SAC ¶ 359.) To establish a due process claim, a plaintiff is required to show that "(1) the state, through the duration and conditions of his confinement, imposed 'atypical and significant hardship' on him giving rise to a protected liberty interest; and (2) the state deprived him of the process he was due to protect that interest." *Brathwaite v. Phelps*, 734 F. App'x 114, 117 (3d Cir. 2018) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)); *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000)). In considering what constitutes "atypical and significant hardship" within the prison setting, the Third Circuit looks to the conditions and duration of the prisoner's segregated confinement. *See Shoats*, 213 F.3d at 144 (considering "the amount of time the prisoner was placed into disciplinary segregation; and . . . whether the conditions of his confinement in disciplinary segregation were significantly more restrictive than those imposed upon other inmates"); *Griffin v. Vaughn*, 112 F.3d 703, 708-09 (3d Cir. 1997) ("If an inmate is committed for an atypical period of time to undesirable conditions in violation of state law, that is clearly a factor to be considered in determining whether he has been subjected to atypical and significant hardship and, accordingly, whether due process protection has been triggered.")

In the SAC, Plaintiff appears to allege that he was in IPC for a period of nearly four years—from March 13, 2013, until December 13, 2016—when he was transferred to a prison in Pennsylvania.[1] (*See* SAC ¶¶ 80, 257.) While in IPC, he alleges a litany of deprivations. At this

---

[1] The Court notes that Plaintiff alludes to a significantly longer period of isolation in his SAC. Nevertheless, because Plaintiff does not provide precise dates, the Court is unable to consider any additional time.

6

early stage of the proceedings, the Court finds that Plaintiff's allegations regarding the length and conditions of his confinement in IPC sufficient to trigger due process protections.

Once a court determines that the interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it: "[i]f there is a liberty interest that has been adversely affected by administrative segregation, we have held that the prison meets its due process obligations if it provides meaningful, periodic reviews of the prisoner's placement in segregation." *Carter v. Beard*, 392 F. App'x 82, 84 (3d Cir. 2010) (citing *Shoats*, 213 F.3d at 145-47). Due process may be violated, however, by perfunctory or "sham" review hearings. *See Sourbeer v. Robinson*, 791 F.2d 1094, 1101 (3d Cir. 1986) ("[t]o insure that periodic review does not become simply a sham, the content and substance of that review must be scrutinized under the illumination of the fourteenth amendment.") (quoting *Mims v. Shapp*, 744 F.2d 946, 954 (3d Cir. 1984)); *see also Washington-El v. Beard*, 562 F. App'x 61, 64 (3d Cir. 2014) (relying on *Sourbeer* but finding no evidence on summary judgment that hearings were perfunctory or inadequate).

The Court construes Plaintiff's SAC to allege that Defendants Lanigan, D'Ilio, Campos, Warren, Robinson, Fletcher, Cortes, Nelson, Barnes, Birardi, Hintz, Spires, Ricci, Dicristi, and Ford, violated Plaintiff's due process rights by failing to provide him with adequate routine reviews of his placement in protective custody and by failing to provide him with a proper initial IPC administrative determination. At this stage, these Fourteenth Amendment due process claims may proceed based on the alleged inadequacy or "sham" nature of Plaintiff's protective custody hearings.

### C. Conditions of Confinement

While Plaintiff does not specifically allege a conditions of confinement claim, the Court will construe Plaintiff to have raised one with respect to the infestation of roaches while he was in

7

IPC. (SAC ¶¶ 168, 342.) To prevail on a conditions of confinement claim, an inmate must be able to allege, "(1) the prison official deprived the prisoner of the minimal civilized measure of life's necessities; and (2) the prison official acted with deliberate indifference in doing so, thereby exposing the inmate to a substantial risk of serious damage to [his] future health." *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 226 (3d Cir. 2015) (citing *Farmer v. Brennan*, 511 U.S. 825, 843 (1994)). "Though purposeful conduct would show at least deliberate indifference, an inmate satisfies [his] burden to make that showing if [he] demonstrates that the defendant acted or failed to act despite having knowledge that [his] actions or inaction, as the case may be, would subject the inmate to a substantial risk of serious harm." *Id.* at 227 (citation omitted).

Here, even assuming that a roach infestation meets the first prong outlined above, Plaintiff has not demonstrated that any alleged Defendants were deliberately indifferent to his claim of a roach infestation. Plaintiff attaches a grievance form to his SAC, in which he wrote to prison officials about the infestation. (SAC, Ex. 155, ECF No. 33-2.) In that grievance, it appears that prison officials responded to the grievance by notifying and sending an exterminator to address the issue. (*Id.*) Thus, Plaintiff fails under the second prong outlined above. The Court, accordingly, dismisses this claim without prejudice.

D.  **Insufficient Legal Assistance**

Plaintiff alleges that various defendants denied him access to the courts when they failed to provide him with an inmate paralegal and failed to forward his legal work when he was confined in Pennsylvania. (SAC ¶ 361.) Inmates have a right of access to the courts. *See Schreane v. Holt*, 482 F. App'x 674, 676 (3d Cir. 2012) (citing *Lewis v. Casey*, 518 U.S. 343 (1996)). "[P]risoners must be afforded the availability of either adequate law libraries or adequate assistance from persons trained in the law in order to exercise their right of court access." *Mitchell v. Wydra*, 377

8

F. App'x 143, 145 (3d Cir. 2010) (quotations and citations omitted). In order to establish that a plaintiff's right to access has been violated, a plaintiff must demonstrate that: "(1) he suffered an 'actual injury' (*i.e.*, that he lost an opportunity to pursue a nonfrivolous claim); and (2) he has no other remedy . . . that can possibly compensate for the lost claim." *Schreane*, 482 F. App'x at 676 (citing *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008)). Prisoners bringing access to the court claims "must satisfy certain pleading requirements: The complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" *Monroe*, 536 F.3d at 206 (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Schreane*, 482 F. App'x at 676) (A plaintiff does not establish a constitutional violation when he establishes only that he had a "mere hope" that he would prevail on the underlying claim.).

Here, Plaintiff alleges that he made multiple requests for paralegal assistance, which fell on deaf ears. (SAC ¶¶ 203-10.) As a result, he states that he was unable to file a notice of appeal and a certificate of appealability in his habeas corpus petition. (SAC ¶¶ 213-14.) Despite this contention, Plaintiff provides no facts detailing the merits of his underlying habeas petition. As such, he has not demonstrated that his lost legal claim was nonfrivolous. The Court, therefore, will dismiss Plaintiff's access to the courts claims without prejudice.

E. **Mail Tampering**

Plaintiff alleges that while housed in IPC, he was subject to an arbitrary mail policy, which requires all close custody unit inmates to have their mail censored. (SAC ¶¶ 171-74, 220-22.) Inmates have a limited liberty interest in their mail under the First and Fourteenth Amendments. *Jones v. Brown*, 461 F.3d 353, 358 (3d Cir. 2006). However, an inmate's constitutional right to send and receive mail may be restricted for legitimate penological interests. *See Thornburgh v. Abbott*, 490 U.S. 401, 407-08 (1989); *see also Turner v. Safley*, 482 U.S. 78, 89 (1987). In *Turner*,

9

the Supreme Court found that a prison regulation infringing on an inmate's constitutional rights is valid so long as it is reasonably related to a legitimate penological interest. *Turner*, 482 U.S. at 89. The Court also recognized that deference should be given to the decisions of prison administrators, especially when those decisions deal with issues of prison safety and security. *Id.*

A review of the SAC reveals that Plaintiff has failed to allege sufficient facts which, if proven, would entitle him to relief under *Turner*. Plaintiff merely makes a conclusory statement that his mail is censored. (SAC ¶¶ 171-74, 220-22.) This alone does not allege sufficient facts which would support a claim that Defendants unlawfully censored Plaintiff's mail. In fact, Plaintiff has not even alleged that any of his mail was confiscated unlawfully. This claim, accordingly, will be dismissed without prejudice for failure to state a claim.

With respect to his legal mail, Plaintiff alleges that he submitted a grievance concerning his legal mail that was withheld and not mailed out (SAC ¶ 247) and opened outside his presence (*Id.* ¶ 278). The Third Circuit has "recognized a cause of action to address '[a] state pattern and practice . . . of opening legal mail outside the presence of the addressee inmate,' because such a practice 'interferes with protected communications, strips those protected communications of their confidentiality, and accordingly impinges upon the inmate's right to freedom of speech.'" *Diaz v. Palakovich*, 448 F. App'x 211, 215 (3d Cir. 2011) (quoting *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006).) The assertion that legal mail is intentionally opened and read, delayed for an inordinate period of time, or stolen also states a First Amendment claim. *McLeod v. Monmouth Cty. Corr. Inst.*, No. 05-4710, 2006 WL 572346, at *3 (D.N.J. Mar. 8, 2006) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1431-32 (7th Cir. 1996). Nevertheless, "[a] single interference with the delivery of an inmate's personal mail, without more, does not rise to the level of a constitutional

deprivation." *Fuentes v. State of N.J. Office of Pub. Defs.*, No. 05-3446, 2006 WL 83108, at *5 (D.N.J. Jan. 11, 2006) (citing *Morgan v. Montayne*, 516 F.2d 1367 (2d Cir. 1975)).

Here, the SAC fails to allege sufficient facts to show a pattern or practice of Plaintiff's legal mail being opened outside his presence. Rather, the SAC alleges that Plaintiff's legal mail was opened outside his presence on only two occasions. (SAC ¶ 278.) These allegations, standing alone, fail to state a claim for relief under § 1983. As such, the Court will dismiss Plaintiff's legal mail claims against Defendants without prejudice.

### F. Free Exercise of Religion

Plaintiff alleges that he was "deprived of all opportunities to participate and exercise his 'religion.'" (SAC ¶ 166) (capitalized in original.) Under the First Amendment, prison officials are prohibited "from denying an inmate 'a reasonable opportunity of pursuing his faith.'" *McCray v. Passaic Cty. Jail*, No. 13-6975, 2013 WL 6199202, at *2 (D.N.J. Nov. 27, 2013) (citing *Cruz v. Beto*, 405 U.S. 319, 322 & n.2 (1972)). In order to establish a claim, a plaintiff must raise sufficient allegations to show that the defendants' actions impinged on his constitutional rights and were not reasonably related to legitimate penological interests. *Williams v. Morton*, 343 F.3d 212, 216 (3d Cir. 2003).

Here, Plaintiff fails to provide any facts which would meet this standard. In fact, Plaintiff has not even alleged what religion he practices, and how his free exercise of that religion was denied. These conclusory allegations are simply insufficient to state a claim for relief. *See Iqbal*, 556 U.S. at 678 (explaining that a pleading must offer more than mere "labels and conclusions or a formulaic recitation of the elements of a cause of action") (citation and quotation marks omitted). Plaintiff's free exercise claim, accordingly, is dismissed without prejudice.

G. **Denial of Medical Care**

Plaintiff states that he was denied proper medical care after he was diagnosed with onychomycosis, or toe nail fungus. (SAC ¶ 224.) He explains that the medical staff failed to treat his fungus, claiming that it was cosmetic, and various prison officials failed to respond to his grievances. (*Id.*)

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). In order to set forth a cognizable claim for the violation of adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Estelle*, 429 U.S. at 106; *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. *Farmer v. Brennan*, 511 U.S. 825, 835-36 (1994).

Here, even assuming that onychomycosis is a serious medical condition, Plaintiff fails to allege that Defendants were deliberately indifferent to his medical need. Deliberate indifference requires a plaintiff to show that a defendant knowingly disregards an excessive risk to an inmate. *See Natale*, 318 F.3d at 582. Here, Plaintiff states that he was seen by medical staff for his fungus, but was told that no treatment was necessary, because the fungus was cosmetic. (SAC ¶ 224.) This is insufficient to state a claim for relief. *See Andrews v. Camden Cty.*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000) (explaining that a "prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference"); *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990) (explaining that "[i]f the doctor's judgment is ultimately shown to be mistaken, at most what

would be proved is medical malpractice, not an Eighth Amendment violation"). This claim, therefore, will be dismissed without prejudice.

H. **Sexual Harassment**

Plaintiff claims that while in IPC he was sexually harassed by prison officials and retaliated against for reporting the misconduct. (SAC ¶¶ 369-70.) Sexual harassment of an inmate by a prison guard or official can rise to the level of an Eighth Amendment violation. *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998); *Boddie v. Schnieder*, 105 F.3d 857, 860-61 (2d Cir. 1997). In order to hold an officer liable for violating the Eighth Amendment, two requirements must be met: (1) "the alleged 'punishment' must be 'objectively, sufficiently serious,'" and (2) "the prison official must have a 'sufficiently culpable state of mind.'" *Boddie*, 105 F.3d at 861 (quoting *Farmer v. Brennan*, 511 U.S. 825 (1994)). Sexual harassment can meet both of these requirements as "severe or repetitive sexual abuse of an inmate by a prison officer can be objectively, sufficiently serious enough to constitute an Eighth Amendment violation," and "[w]here no legitimate law enforcement or penological purpose can be inferred from defendant's alleged conduct, the abuse itself may, in some circumstances, be sufficient evidence of a culpable state of mind." *Id.* (internal citations omitted). Nevertheless, "[w]hile it is possible for sexual abuse of a prisoner to violate the Eighth Amendment, a small number of incidents in which a prisoner is verbally harassed, touched, and pressed against without his consent do not amount to such a violation." *Obiegbu v. Werlinger*, 581 F. App'x 119, 121 (3d Cir. 2014) (internal citation omitted).

In this case, Plaintiff fails to identify any specific instances of sexual harassment. While he makes general allegations that he was subject to sexual advances, without more, the Court cannot conclude whether the advances were sufficiently serious and frequent enough to amount to

13

an Eighth Amendment violation. This claim, therefore, will be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### I. Miscalculated Sentence

In his seventh and eighth causes of action, Plaintiff alleges that his sentence was miscalculated by two and a half years, when the prison failed to award him gap-time credit. (SAC ¶¶ 371-72.) A claim seeking the restoration of sentence-reducing credits is not cognizable under § 1983 because the sole federal remedy for a state prisoner's challenge to the duration of his confinement is a petition for writ of habeas corpus under 28 U.S.C. § 2254. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."). Because Plaintiff's challenge to the deprivation of gap-time credits is not cognizable under § 1983 and must be brought under § 2254, this claim is dismissed with prejudice.

### J. Retaliation

Plaintiff alleges that he was placed in IPC and transferred to the Pennsylvania Department of Corrections in retaliation for remaining silent when questioned about a fight that occurred on March 12, 2013. (SAC ¶ 375.) "Retaliating against a prisoner for the exercise of his constitutional rights is unconstitutional." *Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012) (collecting cases); *see also White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990) ("Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983."). To state a claim for retaliation, a plaintiff must allege that: "(1) he engaged in constitutionally protected conduct, (2) he then suffered some adverse action caused by prison

officials; and (3) a causal link existed between the protected conduct and the adverse action." *Obiegbu*, 581 F. App'x at 122 (citing *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)). "The requisite causal connection can be demonstrated by '(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.'" *Id.* (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

Here, even if Plaintiff was engaged in constitutionally protected activity when he chose to remain silent, he has not provided sufficient facts to suggest that this was a substantial motivating factor in placing Plaintiff in IPC or transferring him to Pennsylvania. He makes conclusory allegations, which fail to establish any causal link between his protected conduct and his adverse action. Further, his transfer to Pennsylvania occurred in December of 2016, over three years after he chose to remain silent. This fails to demonstrate temporal proximity, a prerequisite to state a claim for retaliation. Plaintiff's claim of retaliation, therefore, is dismissed without prejudice for failure to state a claim for relief.

### K. Deprivation of Property

Plaintiff states that upon his return to NJSP after his incarceration in Pennsylvania, a prison official confiscated over $400 worth of his property. (SAC ¶ 341.) "Deprivation of inmate property by prison officials does not give rise to cognizable due process claim if the prisoner has an adequate post-deprivation state remedy." *Crosby v. Piazza*, 465 F. App'x 168, 172 (3d Cir. 2012) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)). "The existence of [a] post-deprivation remedy forecloses any due process claim, even if an inmate is dissatisfied with the result of the process." *Massi v. Zickefoose*, No. 10-4802, 2011 WL 4810414, at *9 (D.N.J. Oct. 7, 2011) (citation omitted).

15

While it is unfortunate that Plaintiff's property was confiscated, he has not alleged a lack of meaningful post-deprivation remedy for the property that was allegedly taken. *See Williams v. Gartrell*, No. 15-5609, 2015 WL 5110913, at *3 (D.N.J. Aug. 31, 2015) ("Although this Court construes this claim as alleging a violation of [p]laintiff[']s due process rights, given the post-deprivation remedy available . . . [p]laintiff's recourse . . . . would be a common-law tort action against the appropriate defendants under the NJTCA [New Jersey Tort Claims Act], not a cause of action pursuant to § 1983.") (citation omitted). Plaintiff's deprivation of property claim, accordingly, is dismissed without prejudice for failure to state a claim for relief.

### L. Negligence and Gross Negligence

In addition to claims brought pursuant to 42 U.S.C. § 1983, Plaintiff alleges state law claims of negligence and gross negligence against more than twenty defendants, for failing to properly screen, train, hire and supervise NJSP employees, and for failing to promulgate proper policies to secure Plaintiff's constitutional rights. (SAC ¶¶ 378-79.)

Jurisdiction over Plaintiff's state law claims is governed by 28 U.S.C.A. § 1367(a), which states in relevant part:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

A district court should decline to exercise supplemental jurisdiction over pendant state law claims "unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)). In the instant matter, this Court will exercise supplemental jurisdiction over Plaintiff's state claims for the sake of judicial

economy and convenience. Nevertheless, Plaintiff's claims are conclusory and fail to specify the specific harm allegedly caused by each individual Defendant. *See Iqbal*, 556 U.S. at 678 (explaining that a pleading must offer more than mere labels and conclusions.) Here, Plaintiff makes global statements about Defendants but fails to identify the specific harms caused by each Defendant. The Court, accordingly, will dismiss Plaintiff's state law claims without prejudice.

**M.     Amendment**

Plaintiff has already been provided three opportunities to sufficiently plead his claims. Ordinarily, those claims which are not being proceeded would be dismissed with prejudice. *See Velazquez v. Zickerfoose*, No. 11-2459, 2014 WL 6611058, at *7 (D.N.J. Nov. 21, 2014) (dismissing with prejudice after having afforded plaintiff three opportunities to perfect pleading); *see also Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112-13 (3d Cir. 2002) (holding that futility of amendment is a proper reason to deny leave to amend). Here, however, each time Plaintiff has filed an amended complaint, he has sought to assert new claims arising out of events occurring after the time he filed his original Complaint in July of 2016. The fact that Plaintiff was provided two opportunities to amend his Complaint does not signify that Plaintiff is given free rein to include new claims that have no common question of law or fact with his originally filed Complaint. *See* Fed. R. Civ. P. 18(a), 20(a)(2) (governing the joinder of claims and limiting the joinder of defendants). Accordingly, for all claims that have been dismissed without prejudice, Plaintiff may file separate civil actions detailing those claims. Should Plaintiff choose to file new actions, he should be cognizant of the applicable statute of limitations.[2]

---

[2] Plaintiff should also note that he will be assessed a new filing fee. In the alternative, he may file a new *in forma pauperis* application.

17

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's due process claims in connection with his placement in IPC shall proceed against Defendants Lanigan, D'Ilio, Campos, Warren, Robinson, Fletcher, Cortes, Nelson, Barnes, Birardi, Hintz, Spires, Ricci, Dicristi, and Ford. Plaintiff's claims against the NJDOC, the NJSP, and the Special Investigation Division of the NJSP are dismissed with prejudice. In addition, Plaintiff's claims for damages against Defendants in their official capacities and Plaintiff's claim related to his miscalculated sentence, are dismissed with prejudice. Finally, the remaining § 1983 claims are dismissed without prejudice as to all Defendants. An appropriate Order follows.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: February 6, 2020